UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

CHESTNUT PETROLEUM DISTRIBUTORS,
INC., *et al.*,

               Defendants.

No. 19 Civ. 3904 (PMH) (JCM)

## **CONSENT DECREE**

# TABLE OF CONTENTS

I.      RECITALS ........................................................................................................ 1
II.     JURISDICTION AND VENUE .......................................................................... 2
III.    ADMISSIONS .................................................................................................... 2
IV.     APPLICABILITY ............................................................................................... 4
V.      DEFINITIONS.................................................................................................... 8
VI.     CIVIL PENALTY ............................................................................................... 9
VII.    INJUNCTIVE RELIEF .................................................................................... 10
VIII.   REPORTING REQUIREMENTS ..................................................................... 14
IX.     STIPULATED PENALTIES ............................................................................ 17
X.      FORCE MAJEURE .......................................................................................... 20
XI.     DISPUTE RESOLUTION ................................................................................ 22
XII.    INFORMATION COLLECTION AND RETENTION...................................... 24
XIII.   EFFECT OF SETTLEMENT ........................................................................... 26
XIV.    COSTS ............................................................................................................. 28
XV.     NOTICES.......................................................................................................... 28
XVI.    EFFECTIVE DATE .......................................................................................... 30
XVII.   RETENTION OF JURISDICTION ................................................................... 30
XVIII.  MODIFICATION .............................................................................................. 30
XIX.    TERMINATION................................................................................................ 31
XX.     PUBLIC PARTICIPATION .............................................................................. 31
XXI.    SIGNATORIES/SERVICE............................................................................... 32
XXII.   INTEGRATION ................................................................................................ 32
XXIII.  FINAL JUDGMENT ........................................................................................ 33
XXIV.   APPENDIX....................................................................................................... 33

## I.   RECITALS

WHEREAS, plaintiff the United States of America, on behalf of the Environmental Protection Agency ("EPA"), filed a Complaint against defendants Chestnut Petroleum Distributors, Inc.; Chestnut Mart of Gardiner, Inc.; Chestnut Marts, Inc.; CPD Energy Corporation; CPD NY Energy Corporation; NJ Energy Corporation; Greenburgh Food Mart, Inc.; and Middletown Food Mart, Inc. (collectively, "Defendants" or "Chestnut") to obtain injunctive relief and civil penalties for violations of the Solid Waste Disposal Act, as amended by various laws, including the Resource Conservation and Recovery Act as amended ("RCRA"), 42 U.S.C. § 6991 *et seq.*, and the federal underground storage tank ("UST") regulations codified in Part 280 of Title 40 of the Code of Federal Regulations;

WHEREAS, the Complaint alleges that Defendants own and/or operate USTs at certain locations in New York and New Jersey (the "Facilities"), as listed in Appendix A, and have failed to satisfy requirements mandated by Subtitle I of RCRA and 40 C.F.R. Part 280 by, among other things: (i) failing to perform release (*i.e.*, leak or spill) detection monitoring; (ii) failing to maintain and provide records of release detection monitoring; (iii) failing to operate (including testing and inspecting), maintain, and provide records of corrosion protection monitoring; (iv) failing to cap and secure USTs that were temporarily closed; (v) failing to perform release detection monitoring for USTs that were temporarily closed; (vi) failing to report suspected releases or unusual operating conditions; (vii) failing to investigate and confirm suspected releases or unusual operating conditions; and (viii) failing at various times to comply with financial responsibility regulations by maintaining insurance policies necessary to compensate third parties who might be injured due to the operation of USTs;

WHEREAS, Defendants answered the Complaint and asserted various defenses;

WHEREAS, the Parties agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the claims asserted by the United States under RCRA and the UST regulations as set forth in the Complaint; and

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the claims asserted by the United States under RCRA and the UST regulations against Defendants as set forth in the Complaint, and that this Consent Decree is in the public interest;

NOW, THEREFORE, with the consent of the Parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## II.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 9006(a)(1) of RCRA, 42 U.S.C. § 6991e(a)(1).

2.      Venue is proper in this District pursuant to Section 9006(a) of RCRA, 42 U.S.C. § 6991e(a), and 28 U.S.C. §§ 1391 and 1395, and other applicable law.

3.      For purposes of the Complaint and this Consent Decree, or any action or proceeding to enforce this Consent Decree, Defendants consent to venue in the Southern District of New York and to this Court's jurisdiction over the Complaint and this Consent Decree, over any action or proceeding to enforce the Consent Decree, and over Defendants.

4.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims against Defendants upon which relief may be granted.

## III. ADMISSIONS

5.      Defendants admit, acknowledge and accept responsibility for the following:

a.      Defendants confirm that at the times specified in subparagraph (c) below, they were the owners and/or operators (directly or through affiliated entities) of the USTs at the

2

Facilities listed in Appendix A to this Consent Decree.

b.     Each of these Facilities contained one or more UST systems, which are subject to Subtitle I of RCRA and the UST regulations.

c.     At the various times specified below, in connection with their ownership and/or operation of the USTs at the Facilities, Defendants failed to do the following as required by the UST regulations:

- perform release (*i.e.*, leak or spill) detection on various dates between January 13, 2011 and December 16, 2012 at two facilities (Mobil, 290 Route 211 East, Middletown, NY and Mobil, 891 Saw Mill River Road, Ardsley, NY);

- maintain and provide records of release detection monitoring  on various dates between September 1, 2011 through October 31, 2012, at eight facilities (a Mobil service station located at 290 Route 211 East, Middletown, NY; a Mobil service station located at 407 White Plains Road, Eastchester, NY; a Shell service station located at 425 Dobbs Ferry Road, Greenburgh, NY; a Shell service station located at 75 Dutch Hill Road, Orangeburg, NY;  a Chestnut Mart of Gardiner service station located at 604 Route 208, Gardiner, NY; an Exxon service station located at 19 East 33rd St., Paterson, NJ; an Exxon service station located at 1400 Route 9 South, Old Bridge, NJ; and an Exxon service station located at 470 Route 1 North, Edison, NJ);

- operate (test and inspect), maintain and provide records of corrosion protection between September 6, 2012 through November 7, 2013, at one facility (a Chestnut Marts service station located at 170 Saw Mill River Road, Mount Pleasant, NY);

- cap and secure USTs that were temporarily closed on various dates between September 7, 2011 and November 7, 2013, at two facilities (a Chestnut Marts service station located at 170 Saw Mill River Road, Mount Pleasant, NY; and a Shell/Chestnut Petroleum service station located at 75 Dutch Hill Road, Orangeburg, NY);

- perform release detection for USTs that were temporarily closed, on various dates between January 13, 2011 and July

3

31, 2013, at four facilities (a Mobil service station located at 1663 Route 9, Wappinger's Falls, NY; a Chestnut Marts service station located at 170 Saw Mill River Road, Mount Pleasant, NY; an Exxon service station located at 9 St. George Avenue, West, Linden, NJ; and an Exxon service station located at 468 Route 17N, Hasbrouck Heights, NJ);

•   report suspected releases or unusual operating conditions for USTs on various dates between August 1, 2011 and August 9, 2012, at two facilities (a Mobil service station located at 891 Saw Mill River Road, Ardsley, NY; and a Middletown Food Mart located at 176 West Main Street, Middletown, NY);

•   conduct release investigations and confirm suspected releases or unusual operating conditions on various dates between August 7, 2011 and August 9, 2012, at two facilities (a Mobil service station located at 891 Saw Mill River Road, Ardsley, NY; and a Middletown Food Mart located at 176 West Main Street, Middletown, NY); and

•   maintain insurance policies necessary to compensate third parties injured due to the operation of their USTs on various dates between January 13, 2011 and March 13, 2014 at six facilities (a Mobil service station located at 6885 Route 9, Rhinebeck, NY; a Getty service station located at 1372 Union Street, Schenectady, NY; a Shell service station located at 3083 Webster Avenue, Bronx, NY; a Mobil service station located on Route 22, Wassaic, NY; a Shell service station located at 340 Violet Avenue, Poughkeepsie, NY; and a Mobil Service station located at 381 Knollwood Road, Greenburgh, NY).

## IV. APPLICABILITY

6.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

7.      Defendants shall provide a copy of this Consent Decree to all officers and employees whose duties might reasonably include compliance with any provision of this Consent Decree and ensure that work required under this Consent Decree, whether performed by an

employee, a contractor or someone else, is performed in accordance with the terms of this Consent Decree.

8.     Except as provided for in sub-paragraph a.  below, the transfer of ownership or operation of a UST system at any of the Covered Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall not relieve Defendants of their obligation to ensure, for at least a period of three years from the Effective Date of this Consent Decree, that the terms of this Consent Decree are implemented by Defendants.  Notwithstanding a transfer, Defendants shall remain responsible for retaining any records required to be maintained by this Consent Decree or applicable regulations.  Should any transfer of ownership or operation of a UST system at a Covered Facility occur prior to the completion of Defendants' compliance obligations under this Consent Decree, then such transfer shall be conditioned upon the transferee's agreement to allow Defendants access to the Covered Facility to complete such obligations.

a.     Notwithstanding the provisions of Paragraph 8 above, Defendants shall be released from their obligations for specific UST systems under this Consent Decree (except for the above-described obligations), provided that all the following have been satisfied:

(1)     At least thirty (30) Days prior to such a transfer (to the extent reasonably possible given the circumstances, but in any event no later than 15 days prior to that date), Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer to EPA Region 2, the United States Attorney for the Southern District

of New York, and the United States Department of Justice, in

accordance with Section XV (Notices);

(2)     No later than thirty (30) business days after the execution or

completion of such transfer, Defendants shall provide an executed

copy of the written transfer agreement regarding the UST systems

to the United States, in accordance with Section XV (Notices);

(3)     Within the two (2) months prior to the closing of any such transfer,

Defendants shall prepare and maintain a document, executed by an

officer or environmental manager, certifying that Defendants have

performed tank and line tightness testing to ensure that there are no

leaking components in the UST system(s), and to the extent that

any component of a  UST system is determined to be inadequate,

Defendants shall repair, replace or upgrade that component or

permanently close the UST system (as appropriate) in accordance

with applicable regulations, including those requiring performance

of a site assessment;

(4)     Defendants shall take all necessary corrective action(s) in a timely

manner in compliance with applicable regulations and in

coordination with the implementing agency, should evidence of a

potential release from a UST system be indicated by either routine

release detection monitoring, tightness tests, or any other evidence

or by a site assessment performed as part of closure;

(5)     Defendants shall have (i) paid any stipulated penalty that has

accrued pursuant to Section IX hereof (Stipulated Penalties) in connection with the Covered Facility; (ii) satisfied their obligations under the Consent Decree with respect to the UST system(s) at the Covered Facility by the time of the transfer including, where applicable, demonstrating continuing compliance with such obligations; (iii) certified (and provided a copy of the certification to the United States following the completion of the transfer) that there are no open spills, continuing releases, or suspected releases at the Covered Facility or that any prior spills or releases have either been remediated or are in the process of remediation and will be completed in compliance with applicable regulations and in coordination with the implementing agency; (iv) provided written confirmation from the proposed transferee that the proposed transferee has taken steps to secure before the transfer financial assurance in accordance with the regulations applicable to owners/operators of USTs; (v) provided written notice to the proposed transferee of the obligation to comply with operator training requirements applicable to owner/operators of USTs;  (vi) certified that the transfer is a bona fide transfer of ownership to an unrelated third party and that the transferee is not affiliated with the Defendants by contractual, corporate or financial relationship (other than the relationship created by the transfer); (vii) provided sufficient documentation to the United States supporting the

7

certification in (vi) above; and (viii) certified that all written

information provided to the United States in connection with the

transfer is truthful and complete, to the best of the knowledge,

information and belief of the signatory.

9.      In any action to enforce this Consent Decree, Defendants shall not raise as a

defense the failure of any of their officers, directors, employees, agents, lessees, sub-lessees, or

contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## V.  DEFINITIONS

10.     Terms used in this Consent Decree that are defined in RCRA or in 40 C.F.R. Part

280 shall have the meanings assigned to them in RCRA or such regulations.  The following

definitions apply for the purposes of this Consent Decree:

"Complaint" shall mean the complaint filed by the United States in this action.

"Consent Decree" shall mean this Consent Decree and Appendix A attached hereto.

"Covered Facility" or "Covered Facilities" shall mean the locations identified in
Appendix A attached hereto, other than Facility 2, which Defendants represent currently
has no USTs, and Facility 13, which Defendants represent they sold in 2016.

"Day" shall mean a calendar day unless expressly stated to be a business day.  In
computing any period of time under this Consent Decree, where the last Day would fall
on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next
business day.

"Defendants" shall mean Chestnut Petroleum Distributors, Inc.; Chestnut Mart of
Gardiner, Inc.; Chestnut Marts, Inc.; CPD Energy Corporation; CPD NY Energy
Corporation; NJ Energy Corporation; Greenburgh Food Mart, Inc.; and Middletown Food
Mart, Inc.

"EPA" shall mean the Environmental Protection Agency and any of its successor or
subordinate departments or agencies.

"Effective Date" shall have the definition provided in Section XVI (Effective Date).

"Facility" or "Facilities" shall mean the locations identified in Appendix A attached
hereto.

"Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

"Owner" is defined in section 9001(3) of RCRA, 42 U.S.C. § 6991(3), as:

      (1)    in the case of an underground storage tank in use on November 8, 1984, or brought into use after that date, any person who owns an underground storage tank used for the storage, use, or dispensing of regulated substances, and

      (2)    in the case of any underground storage tank in use before November 8, 1984, but no longer in use on November 8, 1984, any person who owned such tank immediately before the discontinuation of its use.

"Operator" shall mean any person in control of, or having responsibility for, the daily operation of the underground storage tank as defined in section 9001(4) of RCRA, 42 U.S.C. § 6991(4).

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

"Parties" shall mean the United States and Defendants.

"RCRA" shall mean the Solid Waste Disposal Act as amended by various statutes (including the Resource Conservation and Recovery Act as amended), 42 U.S.C. § 6991 *et seq*.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Subparagraph" shall mean a portion of this Consent Decree identified by a letter.

"Underground storage tank," "underground storage tank system," or "UST" shall mean an underground storage tank, connected underground piping, underground ancillary equipment, and containment system, if any, as defined in 40 C.F.R. Subpart A, § 280.12.

"United States" shall mean the United States of America, acting on behalf of EPA.

"UST regulations" shall mean the regulations codified in Part 280 of Title 40 of the Code of Federal Regulations.

## VI. CIVIL PENALTY

11.    Defendants shall pay the total sum of $187,500 as a civil penalty, in six equal monthly installments of $31,250, beginning 30 Days from the Effective Date, with an additional payment due every 30 days thereafter, until the entire civil penalty is paid. Defendants shall pay each monthly payment, together with interest on any remaining portion of the civil penalty due that has accrued and not yet been paid, from the Effective Date to the date of payment, at the rate

specified in 28 U.S.C. § 1961 as of the Effective Date.  Payment shall be made using

https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions

to be provided to Defendants by the U.S. Attorney's Office for the Southern District of New

York.  The payment instructions provided by the U.S. Attorney's Office shall include a

Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all

payments required to be made in accordance with this Consent Decree.

12.     At the time of each payment, the Defendants shall send notice that payment has

been made to EPA in accordance with Section XV (Notices), and by email to EPA and DOJ at

acctsreceivable.cinwd@epa.gov, EESCaseManagement.ENRD@usdoj.gov, and

Christopher.Connolly@usdoj.gov.  Such notice shall reference the CDCS Number; USAO No.

2014V02109; and DJ Ref. No. 90-7-1-11162.

13.     Defendants shall not deduct any penalties paid under this Consent Decree

pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VII.   INJUNCTIVE RELIEF

14.     Defendants shall maintain compliance with all provisions of Sections 9001-9010

of RCRA, 42 U.S.C. §§ 6991-6991m, and its implementing regulations, 40 C.F.R. Part 280, at

the USTs at the Covered Facilities, except with respect to Covered Facilities transferred in

compliance with Paragraph 8 above, including, but not limited to, the following:

      a.     performing release detection monitoring of the tanks as required by 40

                C.F.R.§ 280.41(a).

      b.     maintaining and providing records of release detection monitoring as

                required by 40 C.F.R. §§ 280.34(b), 280.34(c), and 280.45(b).

      c.     operating and maintaining (including inspecting and testing), and

providing records of corrosion protection monitoring as required by 40 C.F.R. §§ 280.31(a)-(d).

d.  capping and securing USTs that are temporarily closed as required by 40 C.F.R. § 280.70(b)(2).

e.  performing release detection monitoring as well as maintaining and testing corrosion protection for USTs that are temporarily closed, as required by 40 C.F.R. § 280.70(a).

f.  reporting suspected releases or unusual operating conditions as required by 40 C.F.R. § 280.50.

g.  investigating and confirming suspected releases or unusual operating conditions as provided by 40 C.F.R. § 280.52.

h.  temporarily and permanently closing UST(s) as required by 40 C.F.R.§280.70-74.

i.  upgrading existing USTs or meeting new performance standards or closing existing USTs as required by 40 C.F.R.§280.21.

j.  performing annual tightness tests or monthly monitoring of pressurized piping associated with USTs, and maintaining records of such testing or monitoring as required by 40 C.F.R. §§ 280.34(b)(4), 280.34(c), 280.41(b)(1)(B), 280.44(c), and 280.45(b).

k.  maintaining financial responsibility as required by  40 C.F.R. § 280.90 *et seq*.; and

l.  conducting operator training as required by  40 C.F.R. § 280.242(a)-(e).

15.     Defendants represent that they have replaced or supplemented any ball float overfill devices at any UST at the Covered Facilities with either auto-shutoff valves or high-level alarms, as required by 40 C.F.R. § 280.20(c)(3).  Defendants shall ensure that all such newly installed overfill prevention equipment as well as any existing overfill devices shall be inspected at least once every three years in accordance with 40 C.F.R. Section 280.35(a)(2).  As part of any such inspection, Defendants shall ensure that overfill prevention equipment is set to activate at the correct level, as specified in 40 C.F.R. Section 280.20(c), and that the inspection itself is conducted in accordance with one of the criteria set forth in paragraph 40 C.F.R. Section 280.35(a)(1)(ii)(A) through (C).

16.     Defendants shall continue to maintain and operate, for at least a period of three years from the Effective Date of this Consent Decree, an electronic environmental management system providing centralized electronic monitoring of release detection at all USTs at the Covered Facilities.  Any temporary system problem known to Defendants shall be promptly repaired in accordance with the requirements of 40 C.F.R. Section 280.33 and, if so repaired, shall not be deemed a violation of this Consent Decree.

17.     As of the Effective Date of this Consent Decree, and for a period of at least three years from the Effective Date, Defendants shall monitor the under-dispenser containment systems at all USTs at the Covered Facilities, as required by 40 C.F.R. §280.20(f).

18.     As of the Effective Date of this Consent Decree, Defendants shall continue to perform monthly and annual operation and maintenance walkthrough inspections, in accordance with 40 C.F.R. § 280.36(a) & (b).

19.      For each UST installed, brought into use, or discovered at any of the Covered Facilities, or Facility 2 listed in Appendix A, after the Effective Date, Defendants shall comply

with all of the requirements of Paragraphs 14 through 18, above.  Defendants shall, within sixty (60) days after installing, bringing into use, or discovering a UST at a Facility, notify EPA of the UST, and shall bring the UST(s) into compliance with each of the requirements of Paragraphs 14 through 18, above, or remove the UST, in accordance with law.

20.     In the event that, during the term of this Consent Decree, the Administrator of EPA (or his delegate) approves either the State of New York or the State of New Jersey or both, to operate a UST program to regulate USTs and UST systems, as permitted pursuant to Section 9004 of RCRA, 42 U.S.C. § 6991e, those approved state regulations shall be deemed to be the regulations applicable to the USTs located in New York or New Jersey in lieu of the corresponding federal UST regulations cited in this Consent Decree.

21.     Where applicable, this Consent Decree shall supplement but not limit Defendants' responsibility to comply with all applicable federal, state, and local laws, regulations, and permits.  Compliance with this Consent Decree shall not constitute a defense to any action pursuant to such laws, regulations, or permits.

22.     Notice of Acquisition.  Defendants shall, within 60 days prior to the purchase or acquisition of any UST or facility that contains a UST, provide Notice and a Written Certification to EPA of the planned Acquisition.  Defendants may assert, until the time of the closing of the Acquisition, that information regarding the planned acquisition is Confidential Business Information.  If Defendants claim Confidential Business Information, then during this time period EPA will handle such information under the procedure set forth in 40 C.F.R. Part 2. Following any such acquisition, Defendants shall ensure that all USTs at newly acquired facilities are promptly brought into compliance with all applicable UST requirements. Defendants' Written Certification shall state the following: (1) Defendants completed a pre-

acquisition compliance assessment prior to the acquisition; (2) Defendants determined the scope of work needed to be performed to bring any non-complying UST into compliance with RCRA and UST regulations; (3) Defendants developed a protocol for the prompt resolution of any non-compliance of any UST or facility containing a UST; and (4) Defendants developed procedures for the prompt integration of any new UST systems into Defendants' environmental management systems.

23.     Permits.  If any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take such other actions necessary to obtain all such permits or approvals.  If Defendants have submitted timely and complete applications and have timely taken all other actions necessary to obtain all such permits or approvals, Defendants may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation.

## VIII.   REPORTING REQUIREMENTS

24.     In accordance with 40 C.F.R. Section 280.50, Defendants shall continue to report to the implementing agency(ies) New York State Department of Environmental Conservation (NYSDEC) and/or New Jersey Department of Environmental Protection (NJDEP), in accordance with the requirements of NYSDEC and NJDEP, any suspected release or confirmed release of petroleum, petroleum based substances or other regulated substances at the Covered Facilities and shall follow the procedures specified in 40 C.F.R. Section 280.52.  In the event of any suspected or confirmed release as described above, Defendants shall contact the NYSDEC Spill Hotline (1-800-457-7362) and/or the NJDEP Hotline for UST Releases (1-877-927-6337), and

shall investigate and remediate any such release in accordance with 40 C.F.R. Part 280 Subpart E – Release Reporting, Investigation, and Confirmation, and to the extent applicable Subpart F – Release Response and Corrective Action.

25.    <u>Semi-Annual Reports</u>: Within six months after the Effective Date of the Consent Decree, and every six months thereafter until the termination of the Consent Decree pursuant to Section XIX (Termination), Defendants shall submit a report, in hard copy or by electronic format to the United States and the EPA, for the preceding semi-annual period, that contains a written certification attesting to the Defendants' compliance with injunctive work requirements (specified in paragraph 14-18) for the Covered Facilities.  As part of the Semi-Annual Report, the Defendants shall include mention of any suspected or confirmed releases of petroleum, petroleum based substances or other regulated substances from any USTs at their Facilities Containing USTs, if during the preceding six month period, they discovered any such suspected or confirmed releases, and shall state what Defendants did to remediate any releases.  If the Defendants are unable to certify their compliance, the Defendants shall (i) identify the UST system (or systems) and Facility (or Facilities) for which compliance was not attained, (ii) set forth the facts relating to why they cannot certify as to compliance and/or provide records, (iii) identify any work required to achieve compliance, and (iv) promptly correct the non-compliance and submit a written certification and/or records documenting such correction of the non-compliance within 60 days of the date the semi-annual report was due to EPA.  The semi-annual report shall also: (i) state the status of any permit applications relevant to the implementation of this Consent Decree; (ii) inform the EPA of any new facilities acquired, sold, foreclosed, or otherwise transferred or relinquished where USTs are present, or any changes of service of the UST systems since the last reporting period; and (iii) such other information as EPA identifies.

26.     Whenever any violation of this Consent Decree or any other event affecting Defendants' compliance with this Decree, or a condition arising at any facility owned and/or operated by Defendants, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation, event or condition.  This procedure is in addition to the requirements set forth in Paragraph 25.

27.     All certifications and reports shall be submitted to the persons designated in Section XV (Notices).

28.     Each certification or report submitted by Defendants under Section IV, this Section or Section VII shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to ensure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted herein is true, accurate, and complete to the best of my knowledge, information and belief.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where such certification would be impractical.

29.     The certification and reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations that may concurrently be required by RCRA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or similar requirement.

30.     Any information provided by Defendants pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

31.     With respect to each Covered Facility, Defendants shall maintain records of release detection monitoring (including USTs and piping) at such Facility or at a readily available alternative site, as specified at 40 C.F.R. §280.34(c), and as provided for in 40 C.F.R. § 280.45.  Upon request, Defendants shall provide EPA with monthly release detection records together with any other records requested by EPA.

## IX. STIPULATED PENALTIES

32.     Defendants shall be jointly and severally liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation shall mean the failure to perform any obligation required by the terms of this Consent Decree within the specified time schedule(s) established by or approved pursuant to this Consent Decree.

33.     Late Payment of Civil Penalty.  If Defendants fail to pay any installment of the civil penalty required to be paid under Section VI (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

34.     Violations of Injunctive Relief.  The following stipulated penalties shall accrue per violation per Day per facility for each violation of Section VII (Injunctive Relief) of this Consent Decree, excluding the provisions in Paragraph 23 above:

| Period of Delay or Non-Compliance | Penalty Per Day |
|---|---|
| Days 1-20 | $1,000 |
| Days 21-45 | $2,000 |

| | |
|---|---|
| Days 46 and thereafter: | $3,000 |

35.　　Violations of Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of Section 14 (Reporting Requirements) of this Consent Decree:

| Period of Delay or Non-Compliance | Penalty Per Day |
|---|---|
| Days 1-20 | $1,000 |
| Days 21-45 | $2,000 |
| Days 46 and thereafter: | $3,000 |

36.　　Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

37.　　Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

38.　　The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

39.　　Stipulated penalties shall continue to accrue as provided in Paragraphs 34 and 35 during any Dispute Resolution pursuant to Section 0, but need not be paid until the following:

　　　　　　a.　　If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties as agreed or as determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the District Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, if any, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any of the Parties appeal the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, if any, together with interest, within 15 Days of receiving the final appellate court decision.

40.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth in and with the confirmation notice required by Paragraph 12,  except that the transmittal notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

41.    If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall also be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

42.    The payment of penalties and Interest, if any, shall not alter Defendants' obligation to complete the performance of the requirements of this Consent Decree.

43.    <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section 0 (Effect of Settlement), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not

limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid for that violation pursuant to this Consent Decree.

## X.  FORCE MAJEURE

44.      "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' employees or contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

45.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to

prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors or employees knew or should have known.

46.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

47.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.

48.     If Defendants elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraph 49. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI. DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes raised by Defendants arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Consent Decree.

50.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

51.     Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

52.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

53.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

54.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

55.     Standard of Review:

a. Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought pursuant to this Section

XI pertaining to matters that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought pursuant to this SectionXI, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

56.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 39.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be paid as provided in Section IX (Stipulated Penalties).

57.     Nothing in this Section requires the United States to initiate Dispute Resolution before seeking or obtaining a judicial order compelling compliance with the Consent Decree.

## XII. INFORMATION COLLECTION AND RETENTION

58.     The United States and its representatives, including attorneys, contractors, and consultants, and any representative of EPA, shall have the right of entry into any Covered Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

d. conduct interviews, conduct inspections, obtain statements, obtain documentary evidence, including photographs and similar data; and

e. assess Defendants' compliance with this Consent Decree.

59.     Until two years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors, subcontractors, and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors', subcontractors', or agents' possession or control, or that come into its or its contractors', subcontractors', or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

60.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 60 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or

other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

61.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

62.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States (including EPA) pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT

63. Entry of this Consent Decree shall resolve only the civil claims of the United States for the violations alleged in the United States' Complaint against the Defendants that occurred through the Date of Lodging of the Consent Decree.

64. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed as a limit to the

rights of the United States to obtain penalties or injunctive relief under RCRA or its implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 63.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any facility owned and/or operated by Defendants, whether related to the violations addressed in this Consent Decree or otherwise.

65. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Covered Facilities or to Defendants' alleged violations, Defendants shall not assert, and may not maintain, any defense or claim based on the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based on any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 63.

66. This Consent Decree is not a permit or a modification of any permit issued under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree constitutes compliance with provisions of RCRA, 40 C.F.R. Part 280, or with any other provisions of federal, state, or local laws, regulations, or permits.

67. This Consent Decree does not limit or affect the rights of Defendants or the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

68. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.  Entry into this Consent Decree does not waive or prejudice any claim or defense that Defendants may have with respect to any third party in any forum.

## XIV. COSTS

69. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XV. NOTICES

70. Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing by both mail and email and addressed as follows:

|  |  |
|---|---|
| As to the United States by email: | christopher.connolly@usdoj.gov, jennifer.simon@usdoj.gov, rachael.doud@usdoj.gov, and eescdcopy.enrd@usdoj.gov Re: USAO No. 2014V02109; and DJ Ref. No. 90-7-1-11162 |
| As to the United States by mail: | Christopher Connolly, AUSA Jennifer Simon, AUSA Rachael Doud, AUSA U.S. Attorney's Office 86 Chambers St., 3rd Floor |

New York, NY 10007
Tel.:  (212) 637-2761
Re: USAO No. 2014V02109

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ Ref. No. 90-7-1-11162

As to EPA by mail and email:          For technical reports and submissions:
U.S. Environmental Protection Agency, Region 2
Enforcement & Compliance Assurance Division
RCRA Compliance Branch
290 Broadway
New York, N.Y. 10007
Attn: UST Team Leader, Ms. Claudia Gutierrez
Gutierrez.claudia@epa.gov
(212) 637-5036 (phone)

For legal matters:
U.S. Environmental Protection Agency, Region 2
Office of Regional Counsel
290 Broadway, 16th Floor
New York, N.Y. 10007
Attn: Bruce H. Aber, Assistant Regional Counsel
Aber.bruce@epa.gov
(212) 637-3224
Re: U.S. v. Chestnut Petroleum Consent Decree

As to Defendants by mail and email:          Joe McCormick, PG
Environmental Manager
CPD Group
536 Main Street
New Paltz, NY 12561
jmccormick@cpdgroup.com

John L. Barone
Tooher & Barone, LLP
Robinson Square
313 Hamilton Street
Albany, New York 12210
jbarone@tabllp.com

71. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

72. Notices sent by mail shall be sent by Certified Mail or by a courier service, and Parties shall retain proof of mailing.

73. Notices submitted pursuant to this Section shall be deemed submitted upon mailing and emailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

74. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII. RETENTION OF JURISDICTION

75. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI or XVIII, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. MODIFICATION

76. The terms of this Consent Decree, including the attached Appendix, may be modified only by a subsequent written agreement signed by all the Parties.  Furthermore, where the

modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

77. Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XI (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 55, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. TERMINATION

78. After Defendants have maintained continuous satisfactory compliance with this Consent Decree for a period of three years, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

79. Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

80. If the United States does not agree that the Consent Decree may be terminated, Defendants may invoke Dispute Resolution under Section XI.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

81. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

82. Each undersigned representative of Defendants and the Deputy Chief, Environmental Enforcement Section, Environment and Natural Resources Division, U.S. Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

83. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons for the Complaint.

## XXII. INTEGRATION

84. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and

supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIII. FINAL JUDGMENT

85. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIV. APPENDIX

86. Appendix A, attached to and part of this Consent Decree, lists all of the facilities currently subject to this Consent Decree.


SO ORDERED this 11th day of ____September____, 2020:

_____
PHILIP M. HALPERN
UNITED STATES DISTRICT JUDGE

33

FOR THE UNITED STATES OF AMERICA:


June 30, 2020
_____
Dated

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York


By: _____
CHRISTOPHER CONNOLLY
RACHAEL DOUD
JENNIFER SIMON
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.:  (212) 637-2761/3274/ 2746
Fax:  (212) 637-2786
Email:  christopher.connolly@usdoj.gov
        rachael.doud@usdoj.gov
        jennifer.simon@usdoj.gov



_____
Dated

_____
ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

FOR THE UNITED STATES OF AMERICA:


_____
Dated

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:  _____

CHRISTOPHER CONNOLLY
RACHAEL DOUD
JENNIFER SIMON
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.:  (212) 637-2761/3274/ 2746
Fax:  (212) 637-2786
Email:  christopher.connolly@usdoj.gov
          rachael.doud@usdoj.gov
          jennifer.simon@usdoj.gov


_____
Dated

ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


ERIC SCHAAF
Digitally signed by ERIC SCHAAF
Date: 2020.05.28 10:27:59 -04'00'

_____
Dated

ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region 2


05/28/2020
Dated

BRUCE ABER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2

FOR DEFENDANTS:

CHESTNUT PETROLEUM
DISTRIBUTORS, INC.

MAY 15, 2020
Dated

SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561


CHESTNUT MART OF GARDINER, INC.

MAY 15, 2020
Dated

SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561


CHESTNUT MARTS, INC.

MAY 15, 2020
Dated

SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561


CPD ENERGY CORPORATION

MAY 15, 2020
Dated

SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561

CPD NY ENERGY CORPORATION

MAY 15, 2020
_____
Dated

_____
SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561

NJ ENERGY CORPORATION

MAY 15, 2020
_____
Dated

_____
SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561

GREENBURGH FOOD MART, INC.

MAY 15, 2020
_____
Dated

_____
SALEH EL JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561

MIDDLETOWN FOOD MART, INC.

MAY 15, 2020
_____
Dated

_____
VIOLET K. JAMAL
Authorized Signatory
536 Main Street
New Paltz, New York 12561

APPENDIX A

FACILITIES SUBJECT TO THE CONSENT DECREE

For purposes of the Consent Decree, "Facility" or "Facilities" means the retail gasoline service stations, individually or collectively, containing one or more USTs owned and/or operated by Defendants, that are listed below.  "Covered Facility" or "Covered Facilities" means the retail gasoline service stations listed below with the exception of Facility 2, which Defendants represent currently contains no USTs, and Facility 13, which Defendants represent was sold in 2016.

In the event that a question arises about the identification or location of a Facility, the parties shall resort to the facility registration numbers assigned by the State of New York and/or State of New Jersey.

**Facilities:**

1.  Mobil, 1663 Route 9, Wappingers Falls, New York 12590 (ID #3-048003)

2.  Mobil R/S #12048, 290 Route 211 East, Middletown, New York 10940 (ID#3-048054)

3.  Mobil R/S #10441, 407 White Plains Rd, Eastchester, New York 10709 (ID#3-048682)

4.  Mobil Chestnut Mart, Inc., 891 Saw Mill River Road, Ardsley, New York 10502 (ID#3-171662)

5.  Chestnut Marts, Inc., 170 Saw Mill River Road, Mount Pleasant, New York 10532 (ID#3-176524)

6.  Shell Service Station, 425 Dobbs Ferry Road, Greenburgh, New York 10607 (ID#3-176710)

7.  Middletown Food Mart, Inc., 176 West Main Street, Middletown, New York 10940 (ID#3-601034)

8.  Chestnut Mart of Gardiner, 604 Route 208, Gardiner, New York 12525 (ID#3-601225)

9.  Chestnut Petroleum (Shell), 75 Dutch Hill Road, Orangeburg, New York 10962-2104 (ID#3-990119)

10.  NJ Energy Corp, #32084, 19 East 33rd Street, Paterson, New Jersey 07514 (ID#008458)

11.  NJ Energy Corp. #38943, 1400 Route 9 South, Old Bridge, New Jersey

08857 (ID#008646)

12. NJ Energy Corp., #34170, St. George Avenue West, Linden, New Jersey 07036 (ID#008664)

13. NJ Energy Corp. #39885, 468 Route 17 N, Hasbrouck Heights, New Jersey 07064 (ID#016932)

14. NJ Energy Corp., #39847, 470 Route 1 North & Craig, Edison, New Jersey 08817 (ID#022135)

15. Mobil Service Station, 6885 Route 9, Rhinebeck, New York 12572 (ID# 3-175048)

16. Getty Service Station, 1372 Union Street, Schenectady, New York 12308 (ID#4-485799)

17. Shell Service Station, 3083 Webster Avenue, Bronx, New York 10467 (ID#2-325953)

18. Mobil Service Station, Route 22, Wassaic, New York 12582 (ID# 3-174122)

19. Shell Service Station, 340 Violet Avenue, Poughkeepsie, New York 12601 (ID#3-600592)

20. Mobil Service Station, 381 Knollwood Road, Greenburgh, New York 10603 (ID# 3-17352)